UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Crim. No. 16-10236-MLW |
| ROBERT PENA, | ) ) ) | **Leave to File Granted on April 29, 2020** |
| Defendant. | ) ) | |

**Defendant Robert Pena's Reply Memorandum in Support of
Emergency Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)(i)**

On the merits of Defendant Robert Pena's motion for compassionate release, the three most salient facts are undisputed:

(1) Pena faces an increased risk of serious illness and death if he contracts COVID-19.[1]

(2) The conditions at FMC Devens make it impossible for Pena to follow the Center for Disease Control's ("CDC") recommendations for social distancing.

(3) If confined to his home, Pena would not be a threat to the community or a flight risk.

Nevertheless, the government opposes Pena's motion for two primary reasons. First, despite the litany of COVID-19 outbreaks at populous places like prisons and nursing

---

[1] The government quibbles that Pena "fails to substantiate to what extent [his other health] complications present a risk of serious complications from COVID-19." ECF # 175 at 11 and n.3. The reality is that it is impossible to quantify exactly how much risk any person faces, including Pena. But it is beyond dispute that as a 70-year-old black man with various other health issues (including some of the risk factors identified by the CDC), Pena faces an increased risk of serious illness or death if he contracts COVID-19.

homes (and contrary to the CDC's recommendation that people should practice social distancing), the government insists that Pena is actually <u>safer</u> at FMC Devens than he would be at home. Second, the government is concerned that a 32-month sentence, with six months in prison and the remainder in home confinement in the wake of an unprecedented global pandemic, is insufficiently punitive to Pena or may not serve as a sufficient deterrent to others. The government is wrong on both counts.

## I.    Pena is not safer in prison than at home.

The government devotes a substantial portion of its opposition touting the Bureau of Prisons' ("BOP") supposed success at containing COVID-19 in its facilities.[2] According to the government, "the BOP has taken appropriate steps to mitigate [the] risks [of infection] throughout its inmate population, and the implementation of those at FMC Devens, where Mr. Pena is incarcerated, are proving effective."[3]  Notably, however, the government fails to explain why BOP's efforts will fare better at FMC Devens than they have elsewhere. Since the BOP finished implementing its "six-phase action plan" on April 13, the number of confirmed COVID-19 cases in BOP facilities has more than tripled in just 15 days.[4]  Needless to say, Pena does not share the government's view that this data shows BOP's actions "are proving effective."

Likewise, the Court should not take comfort that there is just one confirmed COVID-19 case at FMC Devens so far, especially given that the conditions there have not changed. Pena continues to live in close quarters with dozens of other inmates, and

---

[2]     ECF # 175 at 2-9.

[3]     *Id.* at 12.

[4]     Exhibit 1 (showing 589 total cases on April 13 and 1,877 total cases on April 29).

2

while the government plays up BOP's supposed efforts to reduce risk by increasing home confinement,[5] the number of inmates in the camp at FMC Devens has remained essentially the same for weeks—a 0.9% decrease in the last three weeks (from 108 inmates to 106 inmates).[6]

Stated simply, there is no reason to think that what has happened at BOP facilities like Terminal Island FCI or FMC Fort Worth cannot or will not happen at FMC Devens. Like FMC Devens, those facilities presumably carried out the same "appropriate steps" that FMC Devens has. Three weeks ago, neither facility had a confirmed case of COVID-19; as recently as April 18 (11 days ago), Terminal Island had only 34 cases and FMC Fort Worth had just 16; now, Terminal Island FCI has 580 cases and FMC Fort Worth has 299.[7] The unfortunate reality is that, regardless of BOP's efforts, COVID-19 is likely to spread at FMC Devens, just as it has in other prisons throughout the country.[8]

---

[5] ECF # 175 at 6, 8 ("As of April 24, 2020, FMC Devens has moved eight inmates to home confinement, and 12 more are being vetted for approval.").

[6] As of April 29, the BOP website listed 106 inmates at the camp. https://www.bop.gov/locations/institutions/dev/ As noted in Pena's initial motion, when Pena filed his motion on April 21, there were 108 inmates in the camp. According to documents filed in *Grinis v. Spaulding*, No. 20-CV-10738-GAO (D. Mass. 2020), ECF # 38-2, there were 108 inmates in the camp as far back as April 9. In othe

[7] Exhibit 2 at 1 (showing that as of April 8, neither facility was listed by BOP as having a confirmed COVID-19 case); Exhibit 2 at 2 (showing that on April 18, Terminal Island FCI had 34 confirmed COVID-19 cases and FMC Fort Worth had 16 confirmed COVID-19 cases); Exhibit 2 at 4 showing that on April 29, Terminal Island FCI had 580 confirmed COVID-19 cases and FMC Fort Worth had 299 confirmed COVID-19 cases).

[8] https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html#clusters (listing the largest "clusters" of COVID-19 cases in the country, nearly all of which are in prison settings)

The government takes a different view. According to the government, Pena is actually safer in prison than at home.[9] The government's belief is based on two concerns. First, the government cites the fact that there are more than 5,000 COVID-19 cases in all of Barnstable County and Plymouth County combined.[10] The government's choice of data is puzzling. It is not clear, for example, why the government chose to use countywide data when town-by-town data in Massachusetts is available on a weekly basis.[11] It is even less clear why the government chose to include data for Plymouth County given that Pena's home is approximately 15 miles south of the Bourne Bridge and more than half of the cases in Plymouth County are in Brockton,[12] which is about as close to Pena's home as it is to New Hampshire. To the extent the number of COVID-19 cases near Pena's home is relevant (Pena does not think it is), Pena notes that on a per-capita basis, Falmouth has far fewer COVID-19 cases (396.78 cases per 100,000 people) than the towns that surround FMC Devens: Ayer (495.05) and Shirley (1,364.32).[13] In fact, 165 Massachusetts cities and towns have higher infection rates than

---

[9]  ECF # 175 at 15-16 ("Given the prevalence of COVID-19 around Mr. Pena's home, the Court should be concerned that Mr. Pena's release may present more risk to his health and his wife's.") (emphasis in original).

[10]  Id. at 15.

[11]  https://www.mass.gov/info-details/covid-19-response-reporting#covid-19-cases-by-city/town-

[12]  https://www.mass.gov/doc/covid-19-dashboard-april-29-2020/download (listing 4,871 cases in Plymouth County as of April 29); https://www.mass.gov/doc/confirmed-covid-19-cases-in-ma-by-citytown-january-1-2020-april-29-2020/download (listing 2,735 cases in Brockton as of April 29)/

[13]  https://www.mass.gov/doc/confirmed-covid-19-cases-in-ma-by-citytown-january-1-2020-april-22-2020-pdf/download

4

Falmouth.[14]  By the governnment's logic, all of the people living in those cities and towns would be safer in the camp at FMC Devens.

Next, the government worries that "[i]f Mr. Pena is placed on home confinement, his wife likely will be put in the position of caring for him—including venturing outside the home to run errands and frequently exposing herself to COVID-19 infection and possible complication."[15]  It is true that, as described below, Loretta must sometimes "ventur[e] outside the home to run errands and frequently expos[e] herself to COVID-19 infection and possible complication." The same is true for virtually every person in the Commonwealth, but that does not mean we would all be safer living in the camp at FMC Devens.

Along the same lines, the government faults Pena for not expressly stating that no one else lives with him and his wife, Loretta, or describing Loretta's social-distancing practices with greater specificity.[16]  To remove any doubt, as Loretta describes in her declaration, if Pena were placed on home confinement, he would live alone with Loretta in their three-bedroom, two-bathroom home in Falmouth.[17]  It is the same home that

---

[14]    Id.

[15]    ECF # 175 at 16

[16]    Id. at 15 ("Other than mentioning his wife, he does not describe, for example, the residence itself; whether others reside there; whether or how frequently his wife or others residing at his home come and go; whether or how frequently his wife or others residing at his home have contact with others potentially infected with COVID-19, such as through work or other activities; whether his wife or others residing at his home practice appropriate measures to prevent the spread of COVID-19, such as those at FMC Devens.").

[17]    Exhibit 3, ¶ 2.

5

Pena lived in during nearly all of the three-year period between the time he was arraigned and when he self-reported to FMC Devens. Loretta is 64-year-old retired schoolteacher.[18] She recently lost her father to COVID-19 and acts as a caregiver for her 84-year-old mother for several hours every Tuesday. Not surprisingly given these circumstances, Loretta is especially vigilant to avoid contracting COVID-19 herself. No one comes to her home and she rarely leaves the house.[19]  Aside from walking the dog, Loretta leaves the house only to care for her mother in Franklin (once every week), go grocery shopping (around once every week), and occasionally do a "walk by" at her daughter's home so she can see her daughter and three grandchildren—never entering their house and always maintaining a safe distance.[20]  On these rare occasions when Loretta is in public places, she always wears a mask and always brings wipes and hand sanitizer to disinfect objects others may have touched and sanitize her hands.[21]

The CDC recommends social distancing as the "the best way to reduce the spread of [COVID-19]."[22]  As is obvious, "being in jail increases risk" because "[s]ocial distancing is difficult or impossible" in a prison setting.[23]  This is especially true in a

---

[18]     Exhibit 3, ¶ 1.

[19]     Exhibit 3, ¶ 3-4.

[20]     Exhibit 3, ¶ 4.

[21]     Exhibit 3, ¶ 5.

[22]     https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html

[23]     *Calderon Jimenez v. Cronen*, D. Mass. No. 18-CV-10225-MLW (Mar. 26, 2020) (ECF # 507-1 at 4).

facility like the camp at FMC Devens, where Pena lives, eats, and sleeps with over 100 other inmates while officers and staff leave and return to the facility every day. This is not a close call: Pena would be safer at home than he is in prison.

**II.     Permitting Pena to serve the remainder of his sentence under home confinement is sufficient, but not greater than necessary, to achieve the purposes of sentencing.**

As Pena acknowledged in his motion, he committed serious crimes and deserved (and still deserves) serious punishment. At the same time, Pena is 70 years old and his offenses in this case—which did not involve violence or drugs—are his only convictions. He is not a risk to recidivate. Indeed, the Court recognized as much at sentencing, expressly stating that a 32-month sentence was not necessary to protect the public from Pena or discourage him from committing further crimes.[24] Instead, as the government observes in its opposition, the driving force behind the Court's 32-month sentence was to deter others from committing similar offenses.[25] Pena respectfully submits that the deterrrent effect of the Court's sentence would not be diminished by permitting Pena to serve the remainder of his sentence in home confinement. Put more explicitly, people tempted to commit fraud will not feel more emboldened by knowing that the Court permitted a defendant to serve a portion of his sentence in home confinement after the unexpected emergence of a once-in-a-lifetime global pandemic to which the defendant is particularly vulnerable.

---

[24]    ECF # 163 at 39-40.

[25]    ECF # 175 at 17-18 (citing ECF # 163 at 39).

The world is a different place than it was when Pena was sentenced a year ago. Then, a 32-month sentence may have been sufficient, but not greater than necessary, to achieve the purposes of sentencing. Now, a 32-month sentence, with six months in prison and the remainder in home confinement in the wake of the COVID-19 crisis, is sufficient, but not greater than necessary, to achieve those purposes.

## Conclusion

For these reasons and the reasons stated in Pena's motion for compassionate release, the Court should grant Pena's motion, direct the remainder of his sentence to be served in home confinement, and order his immediate release from custody.

Respectfully submitted,

ROBERT PENA,

By his attorney,

/s/ Scott Katz
Scott Katz (BBO # 655681)
Scott Katz Law
1600 Providence Highway
Walpole, MA 02081
(617) 545-4488
scott@scottkatzlaw.com

Dated: April 29, 2020

## Certificate of Service

I certify this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on April 29, 2020.

/s/ Scott Katz
Scott Katz