UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | Crim. No. 16-10236-MLW |
| ROBERT PENA, | ) | |
| Defendant. | ) | |

**Defendant Robert Pena's Response to Government's Response to Court's Order**

On May 7, 2020, the Court ordered the Warden at FMC Devens to address several specific questions from the Court (ECF # 186). In response, the government submitted (1) a declaration from the Case Management Coordinator at FMC Devens (ECF # 189-1), and (2) a nine-page memorandum opposing the merits of Defendant Robert Pena's pending motion for compassionate release (ECF # 189). Pena respectfully submits this response to highlight several deficiencies in the declaration and address some of the government's arguments.

**Amber Bourke's Declaration**

1. While the Court ordered the Warden to "includ[e] his assessment of the criteria in the Attorney General's March 26, 2020 and April 3, 2020 memoranda," Bourke's declaration includes no such assessment. To be sure, the declaration states what the criteria are, ECF # 189-1, ¶¶ 5, 10-11, but it does not include any assessment of how those criteria apply to Pena.

2.       While the Court ordered the Warden to "describe the reasons for his initial <u>and</u> current decisions," ECF # 186 (emphasis added), Bourke's declaration does not make such a distinction. Instead, the declaration merely cites the number of COVID-19 cases in Falmouth and Barnstable County as of May 7-8, 2020 and the fact that Pena "has not served 50% of his sentence, nor has he served 25% with eighteen months or less to serve." ECF # 189-1, ¶¶ 26-27.

3.       While the Court ordered the Warden to to state "[h]ow many, if any . . . <u>staff</u> at the FMC Devens Camp . . . have been tested for the COVID-19 virus and how many, if any have tested positive," Bourke's information contains no information about staff testing. As of May 12, 2020, the Bureau of Prisons ("BOP") website reports that FMC Devens has two "active" staff cases of COVID-19 (and an "active" inmate case separate from the inmate who has died). Based on a recent news report, it appears that the Bureau of Prisons is not conducting widespread testing of staff and does not know how many have been tested: "The Bureau of Prisons told ABC News that they 'have developed a letter for staff who are in close contact of a COVID-19 positive individual to provide to the local health department to ensure such persons receive priority COVID-19 testing. Because staff are typically tested in the community, we are unable to provide the total number of correctional officers that have been tested.'"[1]

---

[1]      https://abcnews.go.com/US/5000-corrections-officers-contracted-covid-19/story?id=70520117 (last visited May 12, 2020)

**Government's Memorandum**

4.     The government again argues that Pena is safer at FMC Devens than he would be at home because "there are over than 1,000 infections in Barnstable County compared to zero at the Camp at FMC Devens." ECF # 189 at 2.[2] Pena continues to be puzzled by this line of argument. In any event, to the extent these types of comparisons are relevant, Pena again notes there are more cases of COVID-19 around FMC Devens than there are around Pena's home:

- County:   Barnstable County (Pena's home): 1,093 cases

    Middlesex County (FMC Devens): 17,953 cases
    Worcester County (FMC Devens): 7,959 cases
    The per capita rates in Middlesex and Worcester Counties are approximately double the rate in Barnstable County.

- Town:   Falmouth (Pena's home): 136 cases (435.18 cases per 100,000 people)

    Shirley (FMC Devens): 134 cases (1589.73 cases per 100,000 people)
    Ayer (FMC Devens): 45 cases (556.93 cases per 100,000 people)
    Harvard (FMC Devens): 16 cases (216.53 cases per 100,000 people)

In addition, BOP is now reporting three active cases (one inmate and two staff) at FMC Devens.[3] What's more, at home Pena would be confined to his home alone with his wife, who leaves the home a few times a week. At FMC Devens, Pena lives, eats, and sleeps with dozens of other men, while officers and staff—all of whose social distancing practices are unknown and unknowable—leave and return every day. And when they

---

[2]     The government is apparently no longer relying on the number of infections in Plymouth County.

[3]     https://www.bop.gov/coronavirus/ (last visited May 12, 2020)

3

arrive at FMC Devens, they pass within inches of inmates from the camp—including Pena once and perhaps again. This is still not a close call: Pena is safer at home.

5.  The government also argues that release is not appropriate because Pena has not "served at least 50% of his sentence, or 25% of his sentence with less than 18 months left." ECF # 189 at 2. As an initial matter, Pena notes that he will satisfy this requirement on either July 26, 2020 (18 months remaining until Pena's current projected release date) or December 20, 2020 (18 months remaining in Pena's entire 32-month sentence). This rationale also fails to consider the Court's comments at the May 6, 2020 hearing, opining that "I might feel enough of the sentence has been served" and that a decision to place Pena in home confinement would not "undercut" the Court's intention in sentencing Pena.

6.  Finally, the government argues that "[s]imply being over 65 years old should not be sufficient" to warrant compassionate release. ECF # 189 at 3-4. But according to the CDC, a person between 65 and 84 years old who becomes infected with COVID-19 faces as high as a 6 in 10 chance of hospitalization, a 1 in 3 chance of admission to intensive care, and a 1 in 9 chance of death.[4] Given these risks, age alone should be enough to warrant compassionate release, especially where—like Pena—the defendant is a first-time offender who is not among either (a) the 82% of federal prisoners serving sentences for offenses involving sex, violence, weapons, or drugs,[5] or

---

[4] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited May 12, 2020).

[5] https://www.bop.gov/about/statistics/statistics_inmate_offenses.jsp (last visited May 12, 2020) (listing the percentage of BOP inmates by offense: 45.7% for drug

(b) the 87% of federal prisoners serving sentences of more than three years.[6]  While Pena has other risk factors (he is obese and black), Pena respectfully submits that in the circumstances of this case, his age alone brings sufficient risk to warrant him serving the remainder of his sentence in home confinement.

                                                Respectfully submitted,

                                                ROBERT PENA,

                                                By his attorney,

                                                /s/ Scott Katz
                                                Scott Katz (BBO # 655681)
                                                Scott Katz Law
                                                1600 Providence Highway
                                                Walpole, MA 02081
                                                (617) 545-4488
                                                scott@scottkatzlaw.com

Dated: May 12, 2020

## Certificate of Service

I certify this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on May 12, 2020.

                                                /s/ Scott Katz
                                                Scott Katz

---

offenses; 19.6% for weapons, explosives, arson; 10.5% for sex offenses, 3.4% for robbery; and 3.2% for homicide, aggravated assault, and kidnapping offenses).

[6]	https://www.bop.gov/about/statistics/statistics_inmate_sentences.jsp (last visited May 12, 2020) (listing the percentage of BOP inmates by sentence length: 2.3% are serving 0 to 1 year; 10.4% are serving "> 1 year to < 3 years"; the remainder are serving longer sentences).